# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ———————————————— ) | |
| ELMER HERNANDEZ, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 11-956 (ABJ) |
| ) | |
| DISTRICT OF COLUMBIA, ) | |
| WASHINGTON CONVENTION AND ) | |
| SPORTS AUTHORITY, AND ) | |
| OFFICER PARMINELER SINGH, both ) | |
| individually and in his official capacity, ) | |
| ) | |
| Defendants. ) | |
| ———————————————— ) | |

## <u>MEMORANDUM OPINION</u>

Plaintiff Elmer Hernandez brings this action against defendants District of Columbia, Washington Convention and Sports Authority ("WCSA"), and Officer Parmineler Singh ("Officer Singh"), both individually and in his official capacity, alleging various torts and violations of his civil rights. Defendants District of Columbia and Singh answered the complaint as to each count on August 18, 2011 [Dkt. # 17]. Defendant WCSA answered the complaint [Dkt. # 18] with respect to Count I (Assault and Battery), Count II (Negligence), and Count VI (Intentional Infliction of Emotional Distress), but moves this Court to dismiss Count III (Gross Negligence), Count IV (Violations of Plaintiff's Civil Rights), Count V (Abuse of Process), and Count VII (False Arrest and Imprisonment) pursuant to Fed. R. Civ. P. 12(b)(6) [Dkt. # 19]. For the reasons below, the Court will grant WSCA's motion to dismiss as to Count III and Count IV but will deny it with regard to Count V and Count VII.

I.      **BACKGROUND**

Plaintiff, a resident of Virginia, attended a soccer match on June 19, 2010, at the Robert F. Kennedy Memorial Stadium ("RFK Stadium") in Washington, D.C.   Am. Compl. at 2. Officer Singh is a police officer with the District of Columbia Metropolitan Police Department ("MPD") who, on the date in question, was off-duty and employed by WCSA to provide security at RFK Stadium.   Am. Compl. ¶¶ 5–6.   WCSA operates RKF Stadium and routinely employs off-duty MPD officers to provide security at various events.   *Id*. ¶ 6.   This action arises out of plaintiff's encounter with Officer Singh at RFK Stadium.

At some point during the match, a fight broke out between two members of plaintiff's family and other individuals in attendance.   *Id*. at 2.   Plaintiff attempted to break up the fight and sustained injuries when Officer Singh intervened and allegedly "used more force than was reasonably necessary to gain control of the situation."   *Id*.   According to plaintiff, Officer Singh "violently struck [him] from behind" without provocation.   *Id*. ¶ 9.   Plaintiff alleges that he "raised his hands and/or elbow to defend himself" but that Officer Singh "went on to continuously strike and hit [him], even after he fell to the ground."   *Id*. ¶¶ 9–10.

After the altercation, plaintiff was placed under arrest for assaulting a police officer and subsequently transported to the George Washington University Hospital where he was treated for injuries to his forehead, cheek and jaw area; a nasal bone fracture; a nasal laceration; and other lacerations.   *Id*. ¶¶ 10–11.   Plaintiff was arraigned on the assault charge on June 21, 2010.   *Id*. ¶ 13.   However, the case was dismissed for want of prosecution on January 10, 2011.   *Id*.

Plaintiff filed this lawsuit against the District of Columbia and Officer Singh in the Superior Court of the District of Columbia on May 20, 2011.   Defendants subsequently removed the case to this Court on grounds of federal question jurisdiction [Dkt. # 1], and on July 18, 2011

plaintiff filed an amended complaint [Dkt. # 8] naming for the first time WCSA as a defendant. The amended complaint sets forth seven causes of action as to all defendants: Count I alleges assault and battery; Count II alleges negligence; Count III alleges gross negligence; Count IV alleges violations of plaintiff's civil rights under 42 U.S.C. § 1983 (2006), 18 U.S.C. §§ 241, 242, and 245 (2006), and D.C. Code § 4–176 (1981); Count V alleges abuse of process; Count VI alleges intentional infliction of emotional distress; and Count VII alleges false arrest and imprisonment.   Before the Court is WCSA's motion to dismiss Count III, Count IV, Count V, and Count VII of the amended complaint.[1]

## II.    STANDARD OF REVIEW

### A.  Whether Rule 12(b)(6) or Rule 12(c) Applies

As a preliminary matter, the parties dispute whether WCSA's motion may be decided under Fed. R. Civ. P. 12(b)(6).  Plaintiff asserts that a 12(b)(6) motion to dismiss must be filed before any responsive pleadings and points out that WCSA's answer "appears on the docket before th[e] 12(b)(6) motion."  Pl. Opp. at 3.   Despite the docket order, the Court notes that WCSA filed its answer and 12(b)(6) motion on the same day, and because the answer responds only to Counts I, II, and VI, the Court will consider dismissal of Counts III, IV, V, and VII under Rule 12(b)(6).[2]

---

[1]    Defendants District of Columbia and Officer Singh have answered the amended complaint, and discovery is underway.

[2]    Regardless of whether the Court considers dismissal for failure to state a claim under Rule 12(b)(6) or treats WCSA's motion as one for judgment on the pleadings pursuant to Rule 12(c), the applicable standard of review remains the same.  *See Longwood Vill. Rest., Ltd. v. Ashcroft*, 157 F. Supp. 2d 61, 66–67 (D.D.C. 2001) ("The standard of review for . . . a [Rule 12(c)] motion is essentially the same as the standard for a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6).").

### B.  Rule 12(b)(6)

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks omitted); *accord Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  In *Iqbal*, the Supreme Court reiterated the two principles underlying its decision in *Twombly*:  "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft*, 129 S. Ct. at 1949.  And "[s]econd, only a complaint that states a plausible claim for relief survives a motion to dismiss."  *Id*. at 1950.

A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id*., quoting *Twombly*, 550 U.S. at 556. A pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action," *id*., quoting *Twombly*, 550 U.S. at 555, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *id*.

When considering a motion to dismiss under Rule 12(b)(6), the complaint is construed liberally in plaintiff's favor, and the Court should grant plaintiff "the benefit of all inferences that can be derived from the facts alleged."  *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).  Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept

plaintiff's legal conclusions.  *See id.*; *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).

In ruling upon a motion to dismiss for failure to state a claim, a court may ordinarily consider

only "the facts alleged in the complaint, documents attached as exhibits or incorporated by

reference in the complaint, and matters about which the Court may take judicial notice."

*Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002) (citations omitted).

### III.    ANALYSIS

#### A.  Plaintiff's Gross Negligence Claim

In plaintiff's amended complaint, he alleges claims for both negligence (Count II) and

gross negligence (Count III).  Am. Compl. at 7–8.  As a general rule, however, "[t]he law of the

District of Columbia does not recognize degrees of negligence."  *Warner v. Capital Transit Co.*,

162 F. Supp. 253, 256 (D.D.C. 1958), citing *Atchison v. Wills*, 21 App. D.C. 548, 561 (D.C. Cir.

1903).  Plaintiff asserts that because courts in the District of Columbia have distinguished

between gross negligence and ordinary negligence in particular instances, "gross negligence,"

necessarily, "is and should be a separate claim . . . because gross negligence calls for a higher

degree of deviation from the standard of care and a wanton disregard for the rights and safety of

others."  Pl. Opp. at 5.  In support of this argument, plaintiff relies on *District of Columbia v.*

*Walker*, 689 A.2d 40 (D.C. 1997), a decision by the D.C. Court of Appeals that sets forth

separate definitions for gross negligence and ordinary negligence.  *District of Columbia v.*

*Walker*, 689 A.2d 40, 44–45 (D.C. 1997).  *Walker*, however, is inapplicable because the decision

was based on a statute that is not at issue in this case.  In *Walker*, the D.C. Court of Appeals was

tasked with defining gross negligence as that term is used in section 1-1212 of the District of

Columbia Employee Non-Liability Act, D.C. Code § 1-1212 (1981), recodified as D.C. Code §

2-412.  *Id*. at 44.  Section 1-1212 permits recovery in claims against the District of Columbia

arising out of the operation of a police car or an emergency vehicle, but only where the plaintiff establishes that the defendant acted with "gross negligence." *Id*. at 44–45. As such, the Court distinguished gross negligence from ordinary negligence because the statute *required* such a distinction, not because the tort of gross negligence is itself a separate basis of liability under District of Columbia law.

Thus, under District of Columbia law, courts have traditionally analyzed whether a defendant acted with gross negligence only in limited circumstances where gross negligence is a specific element of a claim or defense, *see, e.g.*, *Walker*, 689 A.2d at 44–45, or for equitable reasons, *see, e.g.*, *Carleton v. Winter*, 901 A.2d 174, 181–82 (D.C. 2006) (holding that where an exculpatory clause in a contract limited a party's liability for negligence, a plaintiff could nevertheless proceed on a theory of gross negligence as a matter of "public policy to discourage aggravated wrongs") (internal quotation marks and citations omitted).

Here, plaintiff has already alleged a negligence claim, and considering that gross negligence is neither a specific element to any claim or defense at issue in this litigation, the Court defers to the general rule in the District of Columbia against recognizing degrees of negligence and will dismiss as duplicative plaintiff's claim for gross negligence (Count III) as a separate basis of liability. Plaintiff's claim against WCSA for negligence (Count II) will proceed.

### B. Plaintiff's Claim for Civil Rights Violations

Plaintiff alleges that defendants caused him to be subjected to a deprivation of rights, privileges, and immunities secured by: (1) 42 U.S.C. § 1983; (2) 18 U.S.C. §§ 241, 242, and 245; and (3) D.C. Code § 4–176. Plaintiff's claims under 18 U.S.C. §§ 241, 242, and 245 and pursuant to D.C. Code § 4–176 will be summarily dismissed, however, as there is no private

right of action under these criminal statutes.[3]   As such, this opinion addresses only plaintiff's claim under 42 U.S.C. § 1983.

    1.   Plaintiff's Section 1983 Claim

Plaintiff alleges that WCSA is directly and vicariously liable under 42 U.S.C. § 1983 for violations of his constitutional rights under the Fourth and Eighth Amendments of the U.S. Constitution.  Plaintiff appears to proceed on a theory of municipality liability on the basis that WCSA is "established as an independent authority of the District government." [4]  Am. Compl. ¶ 6. According to plaintiff, WCSA is directly liable for Officer Singh's alleged misconduct because he was acting "pursuant to [WCSA's] employment policies and procedures," and WCSA is vicariously liable for "the actions of Defendant Officer Singh under the doctrine of *respondeat superior*."  Am. Compl. ¶¶ 34, 37.  Under section 1983, however, a plaintiff may not recover under a theory of vicarious liability.  *Monell v. Dep't of Social Svcs.*, 436 U.S. 658, 690–91 (1978) ("[A] municipality cannot be held liable under § 1983 on a *respondeat superior* theory").  As such, the Court addresses only whether plaintiff has pled sufficient facts to state a claim against WCSA for direct liability.

---

3    *See Johnson v. Williams*, 699 F. Supp. 2d 159, 164 n.5 (D.D.C. 2010), citing *Keyter v. Bush*, 2005 WL 375623, at *1 (D.C. Cir. Feb. 16, 2005) (affirming dismissal of claims filed "pursuant to 18 U.S.C. §§ 4, 241, and 242, because, as criminal statutes, these statutes do not convey a private right of action"), *cert. denied*, 546 U.S. 875 (2005); *District of Columbia v. White*, 442 A.2d 159, 163 (D.C. 1982) (noting that evidence of a violation of D.C. Code 4-176 "constituted further evidence of negligence"); *see also Hunter v. District of Columbia*, 384 F. Supp. 2d 257, 260 n.1 (D.D.C. 2005) (rejecting *pro se* plaintiff's assertion of subject matter jurisdiction based on criminal statutes).

4    For the purposes of this motion, the Court accepts as true plaintiff's allegation that WCSA is a state actor that may be subject to liability under 42 U.S.C. § 1983.  Whether WCSA is a municipality or a private entity does not affect the analysis here, though, because courts have applied the *Monell* principles limiting section 1983 liability to private institutions that employ quasi-state actors.  *See, e.g.*, *Maniaci v. Georgetown Univ.*, 510 F. Supp. 2d 50, 62 (D.D.C. 2007).

Section 1983 provides that "[any] person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ."  42 U.S.C. § 1983.  To state a claim for municipality liability under section 1983, a plaintiff must allege both (1) "a predicate constitutional violation" and (2) "that a custom or policy of the municipality caused the violation."  *Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003), citing *Collins v. Harker Heights*, 503 U.S. 115, 124 (1992).  WCSA, then, is subject to liability under section 1983 only "when an official policy or custom causes the [plaintiff] to suffer a deprivation of a constitutional right," *Carter v. District of Columbia*, 795 F.2d 116, 122 (D.C. Cir. 1986), and that policy or custom must itself be the moving force behind the alleged constitutional violation, *id.*, citing *Monell*, 436 U.S. at 694; *see also Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986) ("[M]unicipal liability under § 1983 attaches where – and only where – a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question."); *Okla. City v. Tuttle*, 471 U.S. 808, 817 (1985) (requiring a plaintiff to show a course deliberately pursued by the city establishing an affirmative link between the city's policy and the alleged constitutional violation).

WCSA does not dispute that plaintiff has alleged a "predicate constitutional violation." The sole question for the Court is, does the complaint state a "claim that a custom or policy of the municipality caused the violation"?  *Baker*, 326 F.3d at 1306.  Although a complaint "need not plead law or match facts to every element of a legal theory," *Sparrow v. United Air Lines,*

*Inc.*, 216 F.3d 1111, 1115 (D.C. Cir. 2000) (citations omitted), it must "include some factual basis for the allegation of a municipal policy or custom," *Atchinson v. District of Columbia*, 73 F.3d 418, 422 (D.C. Cir. 1996).  And, as other courts in this district have concluded, the fact that the case arises under section 1983 does not relieve a plaintiff of his obligation to satisfy the criteria established in *Iqbal* and *Twombly*.  *Smith v. District of Columbia*, 674 F. Supp. 2d 209, 214 n.2 (D.D.C. 2009) (sufficiency of a plaintiff's allegations of *Monell* liability must be tested under the standards set out in *Iqbal* and *Twombly*).[5]  The law is clear that plaintiff must allege an "affirmative link" between the policy and the injury; the municipal policy must be alleged to be the "moving force" behind the violation.  *Baker*, 326 F.3d at 1306.

Turning to the complaint, the Court finds plaintiff's mere allegation that Officer Singh acted pursuant to WCSA "employment policies or procedures" insufficient to provide an "affirmative link" between the policy and the injury.  Plaintiff has therefore failed to allege that WCSA was the "moving force" behind the violation.  Accordingly, the Court will dismiss Count IV with respect to Defendant WCSA.

---

[5]     *See also Canas v. City of Sunnyvale*, No. 08–5771, 2011 WL 1743910, at *5–6 (N.D. Cal. Jan. 19, 2011) ("Other than alleging that the officers' EMT training was inadequate [to] enable them to assist the Decedent after he was shot, Plaintiffs do not explain in detail *how* the City's alleged policies or customs are deficient, nor do they explain how the alleged policies or customs caused harm to Plaintiffs and the Decedent.  At most, the allegations permit the Court to infer a mere possibility of misconduct on behalf of the City.") (internal quotation marks and citations omitted); *In re Dayton*, 786 F. Supp. 2d 809, 822–23 (S.D.N.Y. 2011) ("[T]he Amended Complaint states that the City of Middletown has, on information and belief, 'negligently failed to properly administer its agencies[,] departments[,] personnel [,] and the like in regard to the maintenance, design, supervision and control over those accused and detained . . . .' This boilerplate recitation of the elements of a *Monell* claim is insufficient to survive a motion to dismiss.") (internal citations omitted).

### C.  Plaintiff's Abuse of Process Claim

Plaintiff alleges that Officer Singh "used criminal process against [him] in order to intimidate [him] from asserting his rights against the Defendants and in order to cover up the wrongdoing of Defendant and to avoid civil and criminal liability for Defendant's acts."  Am. Compl. ¶ 40.  According to plaintiff, Officer Singh conduct was "malicious[], willful[], and wanton[]" and lacked probable cause.  *Id.* ¶ 41.  Plaintiff alleges that WCSA is "responsible under the doctrine of *respondeat superior* as Defendant Officer Singh was working within his scope of employment . . . ."  *Id.* ¶ 43.  WCSA asserts that it cannot be directly liable for abuse of process because it never initiated criminal proceedings against plaintiff.  Plaintiff, however, does not allege that WCSA is *directly* liable for abuse of process, and the fact that WCSA did not institute criminal proceedings against plaintiff is irrelevant to the question of vicarious liability.[6]

"The essence of the tort of abuse of process is the use of the legal system 'to accomplish some end which is without the regular purview of the process, or which compels the party against whom it is used to do some collateral thing which he could not legally and regularly be required to do.'"  *Scott v. District of Columbia*, 101 F.3d 748, 755 (D.C. Cir. 1996), quoting *Bown v. Hamilton*, 601 A.2d 1074, 1079 (D.C. 1992).  "The critical concern in abuse of process cases is whether process was used to accomplish an end unintended by law, and whether the suit was instituted to achieve a result not regularly or legally obtainable."  *Morowitz v. Marvel*, 423 A.2d 196, 198 (D.C. 1980).  However, "the fact that a person acts spitefully, maliciously, or with an ulterior motive in instituting a legal proceeding is insufficient to establish abuse of process."  *Scott*, 101 F.3d at 755–56 (finding that the plaintiff failed to state a claim for abuse of process

---

6        WCSA fails to address the issue of vicarious liability at all.

when he did not contend that "the filing of criminal charges was intended to pressure him into taking any action or prevent him from taking action, or to achieve any other collateral purpose").

The Court finds that the facts alleged in the amended complaint are sufficient to state an abuse of process claim. Plaintiff has alleged that criminal proceedings were filed against him "in order to intimidate [him] from asserting his rights against the Defendants." Am. Compl. ¶ 40. Intimidation is the collateral purpose that distinguishes these facts from those in *Scott v. District of Columbia*, 101 F.3d 748 (D.C. Cir. 1996). Accordingly, plaintiff may proceed on a theory that WCSA is vicariously liable for Officer Singh's actions because he has pled "sufficient factual matter" to state a claim for abuse of process "'that is plausible on its face.'" *Iqbal*, 556 U.S. 662, 129 S.Ct. at 1949, quoting *Twombly*, 550 U.S. at 570. The Court will deny WCSA's motion to dismiss Count V of the amended complaint.

### D.  Plaintiff's False Arrest and Imprisonment Claim

Plaintiff alleges that "Defendants caused [him] to be arrested and imprisoned" "without just cause or reasonable belief that he committed a crime." Am. Compl. ¶ 52. He further alleges that such acts constitute the torts of false arrest and false imprisonment and that WCSA is "responsible under the doctrine of *respondeat superior* as Defendant Officer Singh was working within his scope of employment . . . ." *Id.* ¶ 53. WCSA asserts that, as a matter of law, it cannot be held vicariously liable for an act which its employee is required by statute and regulation to perform as a Metropolitan Police officer. WCSA's Mem. in Supp. of Mot. to Dismiss at 6. The problem with WCSA's reasoning, however, is that it *assumes* that Officer Singh had probable cause to arrest plaintiff.

To establish a claim for false arrest under District of Columbia law, a plaintiff must demonstrate that he was detained unlawfully.[7]   *See Enders v. District of Columbia*, 4 A.3d 457, 461 (D.C. 2010) ("The gravamen of a complaint for false arrest or false imprisonment is an unlawful detention."). The detention of a plaintiff by a defendant police officer is lawful if the officer effected the detention constitutionally.  *See Barnhardt v. District of Columbia*, 723 F. Supp. 2d at 214–15 (noting that an officer needs probable cause to make an arrest). Alternatively, regardless of whether the detention passes constitutional muster, "a police officer may justify an arrest by demonstrating that (1) he or she believed, in good faith, that his or her conduct was lawful, and (2) this belief was reasonable." *Weishapl v. Sowers*, 771 A.2d 1014, 1020–21 (D.C. 2001) (internal quotation marks and citation omitted).

Here, plaintiff alleges that Officer Singh attacked and viciously beat him without provocation and then falsely arrested him in order "to cover up the wrongdoing of Defendant and to avoid civil and criminal liability for Defendant's acts."  Am. Compl. ¶ 40.  WCSA points to no facts in the complaint that would demonstrate that Officer Singh had probable cause to arrest plaintiff or, if he lacked probable cause, that would demonstrate that Officer Singh had an objectively reasonable, good faith belief that his conduct was lawful.  Although the factual record may ultimately clarify the circumstances surrounding plaintiff's encounter with Officer Singh, to survive a motion to dismiss a complaint need only "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. 662, 129

---

7        Although plaintiff alleges in his complaint that WCSA is liable for "false arrest and imprisonment," Am. Compl. ¶ 53, the Court treats that claim as one simply for false arrest, since "[t]here is 'no real difference as a practical matter between false arrest and false imprisonment.'" *Barnhardt v. District of Columbia*, 723 F. Supp. 2d 197, 214 (D.D.C. 2010), quoting *Shaw v. May Dep't Stores Co.*, 268 A.2d 607, 609 n.2 (D.C. 1970).

S.Ct. at 1949, quoting *Twombly*, 550 U.S. at 570.  Applying that minimal standard of review here, the Court concludes that the plaintiff has adequately alleged that he was falsely arrested by Officer Singh on June 19, 2010.  Accordingly, WCSA's motion to dismiss Count VII for failure to state a claim will be denied.

## IV.    CONCLUSION

For the foregoing reasons, the Court will grant in part and deny in part WCSA's motion to dismiss for failure to state a claim upon which relief may be granted [Dkt. #19].  Accordingly, the Court will dismiss Count III (Gross Negligence) and Count IV (Violations of Plaintiff's Civil Rights) with regard to WCSA with prejudice.  However, the Court will deny the motion as to Count V (Abuse of Process) and Count VII (False Arrest and Imprisonment) and these claims will proceed.

A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE:  February 27, 2012